**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| TESSA L. R., | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | )    **Case No. 24-CV-525-JFJ** |
| | ) |
| FRANK BISIGNANO,[1] | ) |
| Commissioner of Social Security, | ) |
| | ) |
| **Defendant.** | ) |

## OPINION AND ORDER

Plaintiff Tessa L. R. seeks judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for disability benefits under Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, and 1382c(a)(3). In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. For the reasons explained below, the Court affirms the Commissioner's decision denying benefits. Any appeal of this decision will be directly to the Tenth Circuit Court of Appeals.

## I.    General Legal Standards and Standard of Review

"Disabled" is defined under the Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is an impairment "that results from anatomical, physiological, or psychological abnormalities which are

---

[1] Effective May 7, 2025, pursuant to Federal Rule of Civil Procedure 25(d), Frank Bisignano, Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of 42 U.S.C. § 405(g).

demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3). A medically determinable impairment "must be established by objective medical evidence," such as medical signs and laboratory findings, "from an acceptable medical source," such as a licensed and certified psychologist or licensed physician; the plaintiff's own "statement of symptoms, a diagnosis, or a medical opinion [is not sufficient] to establish the existence of an impairment(s)." 20 C.F.R. §§ 404.1521, 416.921. *See* 20 C.F.R. §§ 404.1502(a), 404.1513(a), 416.902(a), 416.913(a). A plaintiff is disabled under the Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (explaining five steps and burden shifting process). To determine whether a claimant is disabled, the Commissioner inquires: (1) whether the claimant is currently working; (2) whether the claimant suffers from a severe impairment or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"), whether the impairment prevents the claimant from continuing his past relevant work; and (5) considering assessment of the RFC and other factors, whether the claimant can perform other types of work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). If a claimant satisfies his burden of proof as to the first four steps, the burden shifts to the Commissioner at step five to establish the claimant can perform other work in the national economy. *Williams*, 844 F.2d at 751. "If a determination can be made at any of the steps

that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Id.* at 750.

In reviewing a decision of the Commissioner, a United States District Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance "and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See id.* A court's review is based on the administrative record, and a court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.* at 1262. A court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.      Procedural History and the ALJ's Decision

Plaintiff, then a 44-year-old female, applied for Title II disability insurance benefits on January 9, 2023, and Title XVI supplemental security income benefits on January 13, 2023, alleging a disability onset date of May 1, 2021. R. 14, 233-35. Plaintiff subsequently amended her alleged disability onset date to June 8, 2022. R. 252-53. Plaintiff claimed she was unable to work because she suffered from "PTSD, severe depression, suicidal thoughts, severe anxiety, neuropathy, stomach issues, balance issues, diabetes, and [high blood pressure]." R. 275. Plaintiff's claims for benefits were denied initially and on reconsideration. R. 115-33, 141-55. Plaintiff then requested a hearing before an ALJ, and the ALJ conducted a telephonic hearing on

April 4, 2024.  R. 39-65.  The ALJ issued a decision on May 14, 2024, denying benefits and finding Plaintiff not disabled because she could perform other work existing in the national economy.  R. 14-33.  The Appeals Council denied review, and Plaintiff appealed to this Court.  R. 1-3; ECF No. 2.

The ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through June 30, 2026.  R. 16.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of June 8, 2022.  R. 16-17.  At step two, the ALJ found that Plaintiff had the following severe impairments: Diabetes Mellitus; Neuropathy; Irritable Bowel Syndrome ("IBS"); Obesity; Major Depressive Disorder ("MDD"); Generalized Anxiety Disorder ("GAD"); and Post Traumatic Stress Disorder ("PTSD").  R. 17.  The ALJ found that Plaintiff did not have a severe cardiac impairment even though she alleged disability, in part, due to high blood pressure.  *Id.*  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment.  R. 17-19.  In assessing Plaintiff's mental impairments under the "paragraph B" criteria, the ALJ found that Plaintiff had moderate limitations in (1) understanding, remembering, or applying information, (2) interacting with others, (3) concentrating, persisting, or maintaining pace, and (4) adapting or managing oneself.  R. 18-19.

After evaluating the objective and opinion evidence and Plaintiff's statements, the ALJ concluded that Plaintiff had the RFC to perform sedentary work with the following limitations:

> [S]he can understand, remember, and carry out detailed but not complex instructions; she can occasionally interact with the public; and she can deal with occasional changes in a routine work setting.

R. 19.  At step four, the ALJ found that Plaintiff was unable to perform her past relevant work as a teacher assistant, customer service representative, and cafeteria cook.  R. 31.  At step five, based on the testimony of a vocational expert ("VE"), the ALJ found that Plaintiff could perform other

occupations existing in significant numbers in the national economy, such as dowel inspector and circuit board assembler. R. 31-32. The ALJ determined the VE's testimony was consistent with the information contained in the Dictionary of Occupational Titles ("DOT"). R. 32. Based on the VE's testimony, the ALJ concluded these positions existed in significant numbers in the national economy. *Id.* Accordingly, the ALJ concluded that Plaintiff was not disabled.

### III.    Issues

Plaintiff raises two points of error in her challenge to the denial of benefits, which the court construes as three for clarity: (1) the ALJ's consistency analysis regarding her bathroom diary was improper; (2) the RFC was not supported by substantial evidence because it did not provide for limitations related to Plaintiff's severe IBS impairment; and (3) the ALJ improperly formulated the RFC based on her own lay opinion.

### IV.    Analysis

#### A.    ALJ's Consistency Analysis Was Proper

Plaintiff argues that the ALJ's consistency analysis of her severe IBS impairment was erroneous. In evaluating a claimant's symptoms, the ALJ must determine whether the claimant's statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and other evidence of record. Social Security Ruling ("SSR") 16-3p, 2016 WL 1119029, at *7 (Mar. 16, 2016). If they are consistent, the ALJ "will determine that the individual's symptoms are more likely to reduce his or her capacities to perform work-related activities." *Id.* If they are inconsistent, the ALJ "will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities." *Id.* Factors the ALJ should consider in determining whether a claimant's pain is disabling include the claimant's attempts to find relief and willingness to try any treatment prescribed; a claimant's regular contact

with a doctor; the possibility that psychological disorders combine with physical problems; the claimant's daily activities; and the dosage, effectiveness, and side effects of the claimant's medication. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012); *see also* SSR 16-3p, at *7 (listing similar factors); 20 C.F.R. §§ 404.1529(C)(3), 416.929(c)(3).[2]

Consistency findings are "peculiarly the province of the finder of fact," and courts should "not upset such determinations when supported by substantial evidence." *Cowan v. Astrue*, 552 F.3d 1182, 1190 (10th Cir. 2008) (citation modified). If the ALJ sets forth the specific evidence she relies on in evaluating the consistency of the claimant's subjective complaints with other evidence, then the ALJ "need not make a formalistic factor-by-factor recitation of the evidence." *Keyes-Zachary*, 695 F.3d at 1167 (citation modified). "[C]ommon sense, not technical perfection, is [the reviewing court's] guide." *Id.* However, consistency findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Newbold v. Colvin*, 718 F.3d 1257, 1267 (10th Cir. 2013).

### 1. ALJ's Consistency Findings Regarding IBS

The ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of those symptoms were "not entirely consistent with the medical evidence and other evidence in the record. . . ." R. 20. In support of this finding, the ALJ discussed the medical and other evidence in the record. The ALJ noted that Plaintiff kept a "bathroom diary"

---

[2] This evaluation, previously termed the "credibility" analysis, is now termed the "consistency" analysis. *See* SSR 16-3p, at *1 (superseding SSR 96-7p). In practice, there is little substantive difference between a "consistency" and "credibility" analysis. *See Brownrigg v. Berryhill*, 688 F. App'x. 542, 545-46 (10th Cir. 2017) (finding that SSR 16-3p was consistent with prior approach taken by Tenth Circuit). Therefore, Tenth Circuit decisions regarding credibility analyses remain persuasive authority.

for five weeks from February 27, 2023, until March 31, 2023.  R. 21.  In the diary, Plaintiff alleged that she suffered "cramps, nausea, vomiting, and diarrhea, occurring multiple times a day" (*id.* (citing R. 628-35)), and that she "went to the bathroom upwards to eight times a day" (R. 30).  However, the ALJ found that "the record shows that [Plaintiff] has fewer limitations than she alleges."  *Id.*  The ALJ did "not discount all of [Plaintiff's] complaints," and recognized that, in view of her impairments, Plaintiff "would undoubtedly have some difficulties."  *Id.*  However, the ALJ concluded that the medical and other evidence supported the RFC.  *Id.*

The ALJ discussed the following treatment history for Plaintiff's IBS and complaints of IBS symptoms to medical providers.  On March 3, 2023, Plaintiff reported to Gretchen Snider, A.P.R.N., that she suffered from "ongoing nausea, diarrhea, and leakage of stool."  R. 21 (citing R. 686).  Upon examination, Ms. Snider found that Plaintiff "was not in acute distress"; "her abdomen was soft without distention, masses, or tenderness"; and "bowel sounds were present."  *Id.* (citing R. 686).  A May 23, 2023, examination by Richard Roberts, D.O., revealed that Plaintiff's abdomen was "round, soft, and nontender," and "[n]on-obstructive bowel sounds [were] auscultated."  *Id.*  On May 16, 2023, Plaintiff underwent an endoscopy and colonoscopy.  *Id.*  The endoscopy showed "Grade A esophagitis, a benign appearing esophageal stenosis, which was dilated, erythematous mucosa in the prepyloric region of the stomach, and a normal duodenum."  *Id.* (citing R. 691).  The colonoscopy showed "a normal terminal ileum," "a 12mm polyp in the mid transverse colon," and "multiple medium-mouth diverticular in the sigmoid colon and distal descending colon."  *Id.* (citing R. 646).  The colonoscopy results stated that "[b]iopsies were taken with cold forceps in the rectum and in the sigmoid colon for histology," but "[t]he [colonoscopy] was otherwise without abnormality on direct and retroflexion views."  *Id.* (citing R. 646).

The ALJ also discussed the following pathology reports from the endoscopy and colonoscopy. *Id.* Plaintiff's esophagus biopsy showed "mild reactive and inflammatory changes consistent with low grade reflux esophagitis" and "gastric mucosa with mild chronic inflammation." *Id.* (citing R. 653). The biopsy was "negative for intestinal metaplasia and evidence of eosinophilic esophagitis." *Id.* (citing R. 653). Plaintiff's small bowel biopsy showed "unremarkable small bowel mucosa[] and [a] fragment of gastric mucosa with mild reactive changes." *Id.* (citing R. 653). Plaintiff's stomach biopsy showed "mild reactive gastropathy" and "was negative for helicobacter organism." *Id.* (citing R. 653). Plaintiff's colon biopsies showed "fragments of unremarkable colonic mucosa with no evidence of colitis." *Id.* (citing R. 653).

The ALJ further addressed two Third-Party Function Reports in the record, which were completed by Plaintiff's mother and friend, finding that the reports "supported [Plaintiff's] allegations." R. 26. Finally, the ALJ discussed the opinion of consultative examiner Kim Beair, MS, LPC, who opined that Plaintiff would be "unable to sustain any activity for consistent lengths of time due to frequent restroom trips." R. 29 (citing R. 638).

### 2.      Plaintiff's Arguments and Court's Analysis

Plaintiff contends that the ALJ erred in the consistency analysis, arguing that the ALJ did not address how her bathroom diary was considered in the decision; improperly discredited the bathroom diary and the symptoms alleged within it by relying on her own lay interpretation of the medical evidence; and engaged in cherry picking of the evidence by ignoring treatment records evidencing her IBS symptoms. ECF No 12 at 10-12.

Plaintiff's arguments are unavailing. The ALJ found Plaintiff's allegations regarding the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. R. 20. In reaching this conclusion, the ALJ

addressed how Plaintiff's subjective complaints were inconsistent with (1) Ms. Snider and Dr. Roberts' findings that Plaintiff's abdomen was normal; (2) the endoscopy and colonoscopy results which showed only mild changes; and (3) Plaintiff's denial of "a history of nausea, vomiting, diarrhea, and abdominal pain."  R. 30 (citing R. 653, 685-86, 703, 947, 952).

Additionally, the ALJ found the Third-Party Function Reports and the opinion of Ms. Beair inconsistent with the objective medical evidence.  Regarding the Third-Party Function Reports, the ALJ concluded that the record evidence "is not consistent with the severity of symptoms and resulting functional limitation described by [Plaintiff's] mother, friends, and [Plaintiff] in this case."  R. 26.  The ALJ was not required to articulate how evidence from non-medical sources, such as the reports, was considered in the same manner as evaluating medical opinions and prior administrative findings.  20 C.F.R. §§ 404.1520c(d), 416.920c(d).  Regarding Ms. Beair's opinion, the ALJ found it "generally unpersuasive" because it was inconsistent with (1) Plaintiff's previous denial of "a history of nausea, vomiting, diarrhea, and abdominal pain" and (2) objective medical evidence showing that Plaintiff's "abdomen was soft, nondistended, and had no masses or tenderness."  R. 26 (citing R. 948, 952, 686).  The ALJ also stated that Ms. Beair's opinion about physical limitations was outside the scope of her profession as a Licensed Professional Counselor. *Id.*

The ALJ's consistency analysis was not based on improper "cherry-picking" of the evidence.  Plaintiff alleges that the ALJ ignored treatment records showing that Plaintiff complained of "diarrhea all the time, leakage of stool, and chronic nausea and vomiting."  ECF No. 12 at 12 (citing R. 686, 1058).  The ALJ did consider those complaints from Plaintiff but found them inconsistent with the objective medical evidence.  R. 30 (citing R. 686).  Plaintiff also cites page 1058 of the record, which are the results of her colonoscopy and endoscopy pathology report.

The ALJ addressed that report and noted that it showed only mild abnormalities, which were accommodated by the sedentary RFC. The Court, therefore, finds no error in the ALJ's consistency analysis.

### B.      RFC Is Supported by Substantial Evidence

A claimant's RFC is his "*maximum* remaining ability to do sustained work activities in an ordinary work setting" for 8 hours a day, 5 days per week despite his medical impairments and symptoms. SSR 96-8p, at *2. In assessing the RFC, the ALJ must "include a narrative discussion describing how the evidence supports each conclusion" as to the claimant's work-related limitations. *Id.* at *7. In other words, the ALJ must explain the basis for the limitations included in the RFC assessment with citations to "specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* Additionally, the ALJ must "explain how any material inconsistencies or ambiguities in the evidence . . . were considered and resolved." *Id.* If the RFC conflicts with a medical source opinion, the ALJ must "explain why the opinion was not adopted." *Id.*

### 1.      ALJ Provided a Sufficient Narrative Discussion

Plaintiff argues that the ALJ did not provide a "logical explanation regarding why limiting the Plaintiff to 'sedentary work' accounts for any limitations associated with the Plaintiff's [IBS]," and the ALJ should have considered her severe IBS impairment and evaluated its effects on her ability to function in the workplace. *Id.* at 12-14. Those effects are Plaintiff's alleged "frequent use of the bathroom and chronic abdominal pain/nausea," and need for "ready access to restroom facilities" and "unscheduled bathroom breaks." *Id.*

The ALJ provided a sufficient narrative discussion to satisfy SSR 96-8p. In finding that Plaintiff could perform a reduced range of sedentary work, the ALJ discussed (1) the findings of

Plaintiff's medical providers that Plaintiff's abdomen was normal, (2) Plaintiff's complaints of IBS symptoms to those providers and in her bathroom diary, (3) Plaintiff's endoscopy and colonoscopy results and corresponding pathology report, (4) Third-Party function reports by Plaintiff's mother and friend, and (5) the opinion of Plaintiff's consultative examiner that Plaintiff would be unable to sustain activity for consistent lengths of time due to needing frequent restroom trips. R. 20-22, 26, 29-30. The ALJ's discussion of each piece of evidence was fully explained above in Part IV.A.1. The ALJ "describe[ed] how the evidence supports [the RFC]" and "cit[ed] specific medical facts," as explained above in Part IV.A.2. SSR 96-8p, at *7.

Plaintiff does not explain or demonstrate why the ALJ's limit to sedentary work would not accommodate any of her alleged IBS symptoms. Because Plaintiff points to no evidence the ALJ overlooked, her arguments amount to a request that the Court re-weigh evidence, which it cannot do. *See Oldham v. Astrue*, 509 F.3d 1254, 1257-58 (10th Cir. 2007) ("We review only the sufficiency of evidence, not its weight . . . . Although the evidence may also have supported contrary findings, we may not displace the agency's choice between two fairly conflicting views.") (citation modified).

### 2. ALJ's Decision to Omit Additional Limitations at Step Four Was Proper

Plaintiff also argues that the ALJ found her IBS to be severe at step two, so "it must have some impact on [her] ability to work." ECF No. 12 at 14. She alleges that "the ALJ developed an RFC that does not contain a single limitation that takes the Plaintiff's symptoms of IBS . . . into account." *Id.*

Plaintiff's argument is unpersuasive, and no additional limitations were required. As an initial matter, the fact that an impairment is severe does not dictate what limitations an ALJ must impose. *Oldham*, 509 F.3d at 1257 ("[A] finding of severe impairments (which is made at step

two) does not require the ALJ to find at step five that the claimant did not have the residual functional capacity to do any work."); *Johnson v. Berryhill*, 679 F. App'x 682 (10th Cir. 2017) ("[A] finding that an impairment is severe at step two is not determinative of the claimant's RFC. . . .").

Further, contrary to Plaintiff's assertion, the ALJ's sedentary work RFC contains inherent limitations. *See Wells v. Colvin*, 727 F.3d 1061, 1275 n.12 (10th Cir. 2013) (recognizing that there are exertional limitations "inherent in sedentary work"); *Harden v. Colvin*, No. 14-CV-03225, 2016 WL 354856, at *10 (D. Colo. Jan. 29, 2016) ("While the ALJ did not explicitly list manipulative restrictions in the RFC, she did by the inherent nature of allowing only 'sedentary work,' include a restriction that Plaintiff could lift no more than 10 pounds."). Plaintiff has not presented persuasive objective medical records to demonstrate that the limitations inherent in a sedentary RFC are insufficient to accommodate her severe IBS impairment. Although Plaintiff's statements provide some support for the need for ready access to restroom facilities and frequent, unscheduled bathroom breaks, the issue for judicial review is whether the ALJ's decision is supported by substantial evidence, not whether Plaintiff's position is supported by substantial evidence. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); 42 U.S.C. § 405(g). *See also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) ("Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations.") (citation omitted). The cited testimony does not indicate that the RFC is unsupported by substantial evidence or that the ALJ's assessment of the medical evidence was flawed. Plaintiff simply invites the court to re-weigh the evidence, which is not permitted. *See Hackett*, 395 F.3d at 1172.

The RFC is supported by substantial evidence. The ALJ included a sufficient narrative discussion of how the evidence in the record supports the RFC, and the ALJ was not required to include additional limitations beyond the assigned RFC.

**C.      ALJ Did Not Form Her Own Medical Opinion**

Plaintiff argues that the ALJ's rejection of all medical opinions related to her physical limitations and development of the RFC "based upon the ALJ's misrepresentation and lay interpretation of the records" was error. ECF No. 12 at 16. Plaintiff contends that such error was compounded by the fact that she has multiple severe impairments: "diabetes mellitus, neuropathy, [IBS], obesity, [MDD], [GAD], and [PTSD]." *Id.* at 16-17. Because Plaintiff only elaborates on and cites evidence for her arguments that the ALJ erred in evaluating medical opinions as to her severe IBS and neuropathy impairments, *id.* at 17-19, the Court only addresses these conditions. *See Femedeer v. Haun*, 227 F.3d 1244, 1255 (10th Cir. 2000) ("Perfunctory complaints that fail to frame and develop an issue are not sufficient to invoke appellate review.").

"The ALJ may not substitute his own opinion for that of Plaintiff's doctor." *Miller v. Chater*, 99 F.3d 972, 977 (10th Cir. 1996) (citation modified); *see also Kemp v. Bowen*, 816 F.2d 1469, 1476 (10th Cir. 1987) ("While the ALJ is authorized to make a final decision concerning disability, he cannot interpose his own 'medical expertise' over that of a physician . . . ."). However, an ALJ is not required to have a specific RFC opinion to assess Plaintiff's functional limitations. *See Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) (explaining that "there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question"); *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004) ("The ALJ, not a physician, is charged with determining a claimant's RFC from the medical record.") (citation modified). Additionally, "'[t]he ALJ has a basic

obligation in every social security case to ensure that an adequate record is developed during the disability hearing consistent with the issues raised.'" *Cowan*, 552 F.3d at 1187 (quoting *Henrie v. U.S. Dep't of Health & Human Servs.*, 13 F.3d 359, 360-61 (10th Cir.1993)).  The ALJ's duty "'is one of inquiry, ensuring that the ALJ is informed about facts relevant to his decision and learns the claimant's own version of those facts.'" *Id.* (quoting *Henrie*, 13 F.3d at 361).  In satisfying this duty, the ALJ "does not have to exhaust every possible line of inquiry in an attempt to pursue every potential line of questioning"; instead, the "standard is one of reasonable good judgment." *Hawkins v. Chater*, 113 F.3d 1162, 1168 (10th Cir. 1997).

### 1.    Severe IBS Impairment

As to her severe IBS impairment, Plaintiff argues that the ALJ "cannot herself determine whether based on the Plaintiff's abdomen examination, endoscopy, and colonoscopy, the Plaintiff's complaints of frequent bathroom use [are] not supported by the medical evidence." ECF No. 12 at 19.  Plaintiff argues that the ALJ was required to obtain a medical opinion to interpret the objective medical evidence. *Id.*

The Court rejects this argument.  The ALJ did not "play doctor" or develop the RFC from "whole cloth," as Plaintiff argues, because the ALJ did not make her own diagnoses and determinations.  Rather, the ALJ considered and relied on the findings of various medical providers from treatment notes in the record.  R. 20-21, 29-30.  That reliance is apparent from the ALJ's rigorous citations to the objective medical evidence in the record. *See id.*  This is sufficient for determining the RFC in this case. *See Meehan v. Kijakazi*, No. CIV-21-1191, 2023 WL 2169092, at *5 (W.D. Okla. Feb. 22, 2023) ("Although an ALJ cannot make his/her own medical diagnoses from raw medical data in the record, an ALJ must be able to look at the interpretations of a plaintiff's raw medical data and determine limitations for a Plaintiff's RFC even if no medical

professional offered any opinion as to what those RFC limitations should be.").  In the absence of a persuasive medical source opinion regarding Plaintiff's IBS and its effects, the ALJ properly evaluated such limitations based on the record as a whole.  *McDonald v. Astrue*, 492 F. App'x 875, 885-86 (10th Cir. 2012) (rejecting Plaintiff's "contention that an ALJ is not competent, in the absence of a medical opinion, to assess the severity of mental symptoms and determine the extent of the limitations that result based on the evidence in the claimant's medical records, her daily activities, and her positive response to medication"); *Young v. Barnhart*, 146 F. App'x 952, 955 (10th Cir. 2005) ("The determination of RFC is an administrative assessment, based upon all the evidence of how the claimant's impairments and related symptoms affect her ability to perform work-related activities.").

### 2. Severe Neuropathy Impairment

As to her severe neuropathy impairment, Plaintiff argues that the ALJ developed the RFC from "whole cloth" in spite of (1) "the evidence in the record," and (2) the fact that the ALJ did not find "any medical opinions dealing with the Plaintiff's physical functioning determined to be persuasive."  ECF No. 12 at 18.  In support of these arguments, Plaintiff cites her testimony that she cannot stand for more than thirty minutes without experiencing pain in her feet due to her neuropathy.  ECF No. 12 at 17 (citing R. 55).  Plaintiff also points to her function report, where she detailed her neuropathy symptoms, including that she cannot stand for more than ten minutes due to pain; "she experiences issues with her balance"; "she can walk about half of a block"; and she "has problems lifting, squatting, bending, walking, and standing."  *Id.* (citing R. 294-99, 324-29).  Additionally, Plaintiff cites the state agency consultants' opinions that Plaintiff was capable of light work (*id.* (citing R. 26, 71)) and Dr. Cupp's opinion that "Plaintiff cannot walk 200 feet without stopping to rest (*id.* (citing R. 971)).

15

The ALJ did not develop her own medical opinion regarding Plaintiff's neuropathy, and the RFC is supported by substantial evidence. First, the ALJ formulated the RFC by relying on evidence in the record. The ALJ determined that the objective medical evidence warranted the RFC and that Plaintiff's allegations of more severe symptoms were "not entirely consistent with the medical evidence and other evidence in the record." R. 20-21, 30. The ALJ thoroughly discussed Plaintiff's medical examinations treating her neuropathy, her electromyography and its results, her subjective complaints to medical providers and during the hearing, and that Plaintiff was taking gabapentin as treatment. R. 21-22. The ALJ noted that Plaintiff's testimony that "she cannot be on her feet for more than thirty minutes without having to sit," was contrary to Dr. Roberts' examination of Plaintiff. R. 30. Dr. Roberts' examination showed that Plaintiff "moved about the exam room easily, had a negative straight leg raise in both the supine and seated positions, bilaterally, was able to squat and rise without assistance, and ambulated with a stable gait, at an appropriate speed, without the use of an assistive device." *Id.* (citing R. 704). Additionally, the ALJ noted that Plaintiff previously testified that she did not have difficulties sitting, and the ALJ accommodated Plaintiff's neuropathy impairment with a sedentary RFC. *Id.*; SSR 96-9p.

Second, the ALJ was within her power to formulate the RFC without finding any of the medical opinions in the record fully persuasive. *See Chapo*, 682 F.3d 1288 ("[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question."). There were three medical opinions in the record speaking to Plaintiff's functional capacity in relation to her neuropathy: one from Plaintiff's treating provider Dr. Cupp, and two from state agency physicians. Regarding Dr. Cupp's opinion that Plaintiff "cannot walk 200 feet without stopping to rest" (R. 26 (citing R. 972)), the

ALJ decided that opinion was unpersuasive. The ALJ reasoned that this conclusion was not supported by Dr. Cupp's earlier August 31, 2023, examination where Plaintiff's "manual muscle test was 5/5 in the lower extremities, bilaterally," or by Dr. Roberts's May 23, 2023, examination where Plaintiff "ambulated with a stable gait, at an appropriate speed, without the use of assistive devices." R. 26-27 (citing R. 952, 704). Regarding the state agency physicians' opinions, which were identical, the ALJ found them unpersuasive and limited Plaintiff to a *more* restrictive physical RFC. That is, the ALJ limited Plaintiff to sedentary work with complexity, interactivity, and unpredictability limitations, while the agency physicians limited Plaintiff to light work. R. 27 (citing R. 115-142, 143-184). Because the ALJ rejected the state agency physicians' findings in Plaintiff's favor, any purported error in the ALJ's analysis of the findings is harmless. *See Mounts v. Astrue*, 479 F. App'x 860, 868 n.2 (10th Cir. 2012) (declining to address argument that ALJ erred by giving Plaintiff additional RFC limitation that "work[ed] to her benefit"); *Beverly A. T. v. O'Malley*, No. 23-cv-00050, 2024 WL 1308039, at *4-5 (N.D. Okla. Mar. 27, 2024) (declining to address argument that ALJ erred in evaluating prior findings, where ALJ "rejected the prior findings in [plaintiff's] favor").

The ALJ did not form her own medical opinion on either impairment, but instead relied on the objective evidence of record in arriving at the RFC determination.

## V.    Conclusion

The Commissioner's decision finding Plaintiff not disabled is **AFFIRMED**.

**SO ORDERED** this 24th day of March, 2026.

**JODI F. JAYNE, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**